**STATE of Iowa, Appellee,**

v.

**Jerry Lee WILLIAMS, Appellant.**

No. 83–748.

Supreme Court of Iowa.

Jan. 16, 1985.

Barry M. Anderson of Anderson & McMurray, Keokuk, for appellant.

Thomas J. Miller, Atty. Gen., and Joseph P. Weeg, Asst. Atty. Gen., and Michael P. Short, Co. Atty., for appellee.

Considered by UHLENHOPP, P.J., and HARRIS, McCORMICK, McGIVERIN, and SCHULTZ, JJ.

McCORMICK, Justice.

Defendant Jerry Lee Williams appeals from his conviction by jury and sentence for first degree murder in violation of Iowa Code section 707.2 (1981). He contends that the trial court erred in overruling his motions to dismiss the indictment, in overruling his challenge to evidence of his alleged complicity in another homicide, and in overruling his motion for judgment of acquittal. We find no merit in his contentions and therefore affirm the trial court.

The charge arose from the slaying of Iowa State Penitentiary inmate Gary Tyson on September 2, 1981. Defendant was among a group of inmates being held in administrative segregation in cellhouse 20 on that date. Defendant was then under indictment for the alleged murder of inmate Allen Lewis on May 18, 1981. Tyson's death was discovered after a prison riot was brought under control.

The State's evidence tended to show that defendant and several fellow members of a prison gang called the Vice Lords killed Tyson during the riot because they suspected Tyson was going to provide the State with evidence against them on the Lewis homicide. We recently affirmed the conviction of another alleged participant in the Tyson killing in *State v. Doss*, 355 N.W.2d 874 (Iowa 1984). The evidence in this case was similar to that recited in *Doss*. *Id.* at 876–77. In particular the jury could find that defendant held Tyson in a chokehold while Allen Langley repeatedly stabbed him. Tyson was beaten, choked and stabbed in the chest, back and neck. Forensic testimony indicated that he died from the stab wounds.

I. *The motions to dismiss.* In various motions to dismiss, defendant challenged his indictment on grounds that three members of the grand jury in the present case had served on the Lewis grand jury, that minutes of testimony of two material witnesses were omitted from the indictment, that the minutes failed to show Tyson was dead, that the prosecutor was guilty of misconduct before the grand jury, and that the State failed to comply with an order for a bill of particulars. We find no merit in any of these grounds.

■ Iowa Rule of Criminal Procedure 3(2)(b)(3) allows a defendant to challenge a grand juror if the grand juror is a complainant on a charge against the defendant or if the juror "has formed or expressed such an opinion as to the guilt or innocence of the defendant as would prevent the juror from rendering a true indictment upon the evidence submitted." A motion to dismiss may be based on such challenges. Iowa R.Crim.P. 3(2)(d). Here defendant showed only that three members of the indicting grand jury had also served on the grand jury that indicted him for the Lewis

murder. Such prior service is not per se disqualifying, and defendant did not establish a basis for challenge under the rule. *See State v. Gartin,* 271 N.W.2d 902, 908 (Iowa 1978). Nor did defendant establish, as he alleges, that the grand jury was not "selected, drawn, summoned, impaneled, or sworn as prescribed by law" within the meaning of rule 10(6)(b)(5). The trial court did not err in refusing to dismiss the indictment on this ground.

■ The ground concerning omission of witness minutes is based on the failure to show minutes of testimony of grand jury witnesses Terry Wilson and Robert Williams with the indictment. Rule 10(6)(b)(1) authorizes a motion to dismiss when minutes of grand jury witnesses are not returned with the indictment. When no minutes are attached, dismissal is required because no basis appears for a finding of probable cause. *State v. Shank,* 296 N.W.2d 791, 792 (Iowa 1980). Otherwise, however, the rule does not require endorsement on the indictment of minutes of testimony of witnesses whose testimony the grand jury determines is not material. *See State v. Stump,* 254 Iowa 1181, 1198–99, 119 N.W.2d 210, 220, *cert. denied,* 375 U.S. 853, 84 S.Ct. 113, 11 L.Ed.2d 80 (1963) (interpreting statutory predecessor to rule 10(6)(b)).

■ A minute of testimony was subsequently filed for Wilson. It showed he was a member of the Vice Lords whose testimony was similar to that of other witnesses except he was not present when Tyson was killed. The record shows witness Williams was in charge of the State's investigation of the killing. He was called as a rebuttal witness at trial to testify concerning his investigation, but it appears his direct observations occurred after the fact and added little, if anything, to the testimony of eyewitnesses. Much of his investigation involved obtaining information from other witnesses who testified before the grand jury and at trial. We are unable to say as a matter of law upon this record that the grand jury breached its duty to return minutes of testimony for all witnesses whose testimony the grand jury deemed material to the indictment.

■ Defendant's additional ground that the indictment should have been dismissed because of the absence of grand jury testimony that Tyson died from his wounds is an attack on the sufficiency of grand jury evidence to support a finding of probable cause. Apart from the fact that ample testimony was shown to establish the death, the asserted ground is not a basis for dismissal under rule 10(6)(c). *See Doss,* 355 N.W.2d at 880.

■ The prosecutorial misconduct ground is based on an exchange between the prosecutor and defendant before the grand jury in which defendant disclosed he was indicted for the Lewis murder, the prosecutor's alleged failure to call witnesses whose testimony would be favorable to defendant, and the grand jury's failure to indict Michael Gavin who testified before the grand jury and at trial that he killed Tyson. This ground relies on "due process and equal protection," presumably as assured under the fourteenth amendment of the United States Constitution. The applicable standard governing prosecutor conduct before a grand jury is explained in *State v. Paulsen,* 286 N.W.2d 157, 159–61 (Iowa 1979). Applying that standard here, we find no denial of due process or equal protection in the conduct of which defendant complains. No reasonable likelihood exists that such conduct induced any action other than that which the grand jurors in their uninfluenced judgment would take. We do not intimate that we otherwise find any merit in defendant's allegations that the prosecutor engaged in misconduct.

■ Defendant also sought dismissal based on alleged noncompliance with two orders for bill of particulars. The court initially sustained a defense motion for bill of particulars. The State filed particulars, and defendant moved to dismiss because of their alleged inadequacy. The court overruled the motion but required the State to file a supplemental bill. While motions by the State to reconsider and for enlarge-

ment of time were pending, defendant filed a new motion to dismiss. On the same date, the State filed a supplemental bill of particulars. The court subsequently overruled the second motion to dismiss. Defendant contends that each of his motions should have been sustained. Applicable principles are reviewed and applied in *Doss*, 355 N.W.2d at 880–81.

We find that the indictment, minutes of testimony, and particulars were sufficient to notify defendant of the offense charged. He was informed of the nature of the offense and its statutory basis. He was told who he was accused of murdering, when and how the event allegedly occurred, and his alleged role in the killing. He was also told that the State was relying on alternative theories of his guilt as a principal and as an aider and abettor.

We hold that the trial court did not err in overruling defendant's motions to dismiss on any of the asserted grounds.

■ II. *Evidence of the Lewis homicide.* By motion in limine, motion for mistrial, motion for new trial and various objections at trial, defendant challenged the admissibility of evidence connecting him to the May 1981 killing of Allen Lewis. Our rule on proof of other crimes, wrongs or acts is now incorporated in Iowa Rule of Evidence 404(b). It provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Earlier statements and applications of the rule appear in numerous cases, including *State v. Wright*, 191 N.W.2d 638, 639–40 (Iowa 1971). In this case the State contends that evidence of defendant's complicity in the Lewis killing was relevant on the issue of motive.

The issue is clouded by the State's failure to abide by its original stated intention to show only that defendant was being held in cellhouse 20 for investigation in connection with the Lewis homicide. Its most flagrant departure from that constraint occurred during its direct examination of Vice Lord member Robert Frank Taylor. His testimony included the following:

Q. Could you explain to the jury what your personal knowledge is [as to what occurred to Allen Lewis on May 18, 1981]? A. It is that I witnessed ... Vice Lords coming out of the bathroom after one guy was stabbed—that one guy would be Allen Lewis.

Q. Would you explain to the jury who it was that you saw come out of the bathroom at the time Lewis was stabbed? A. I seen Gary Tyson, Jerry Williams, and Slim Goodie.

Defendant objected on relevancy and prejudice grounds to the first question but not the second, and his objection was overruled. We pass the issue of error preservation.

Defendant contends that the court erred even in permitting testimony that defendant was being held for investigation of the Lewis murder. He also contends that a more grievous error was committed when the court allowed testimony linking defendant to that offense. His complaint is that the evidence of his involvement in that incident was not clear as required by *State v. Johnson*, 224 N.W.2d 617, 620 (Iowa 1974), that its probative value was outweighed by its prejudicial effect, and that the evidence included inadmissible hearsay.

Even though defendant complains that the evidence was insufficient to show his involvement in the Lewis homicide, he points to several examples in the record of testimony he alleges connected him to the incident. We find that the testimony taken together constituted clear evidence that defendant was a participant in the Lewis killing. The jury could reasonably infer that Lewis was murdered and that defendant at least aided and abetted the offense. It was not necessary for the State to show his participation as a principal or to prove his complicity beyond a reasonable doubt.

Defendant's alleged involvement in the Lewis homicide was plainly relevant on the issue of his motive to murder Tyson. The State's theory, which had substantial support in the evidence, was that Lewis was murdered by several Vice Lords. Tyson, who was a gang member, purportedly made statements that convinced the Vice Lord leadership he ·was going to give evidence against defendant and · other Vice Lords implicating them in the murder. Defendant thus had a reason to participate in the murder of Tyson.

■ This does not end the inquiry, however. We emphasized in *Johnson* that "[e]ven when evidence of other crimes has some relevancy, the trial court must exercise discretion to determine whether the probative value of the evidence is outweighed by its prejudicial effect." 224 N.W.2d at 621. The balancing test is expressed in general terms in Iowa Rule of Evidence 403: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice...." We review the admissibility decision for abuse of discretion. In order to reverse the trial court on this issue we would have to find as a matter of law that the danger of unfair prejudice outweighed the probative value of the evidence. In assessing the danger of unfair ·prejudice we take into account related disclosures in an exhibit earlier introduced by defendant.

At a time when the jury had been told only that defendant was being held in cellhouse 20 for investigation in connection with the Lewis slaying, defendant introduced an exhibit during the cross-examination of a prison official from which the jury could infer that defendant had been charged with murdering Lewis and that an inmate had given a statement alleging he saw defendant with Tyson and other Vice Lords near the scene of the killing with blood on their clothes. The exhibit consisted of documents prepared by Tyson in a pro se federal civil rights suit, and defendant introduced the exhibit in an effort to impeach the prison official who denied

knowing Tyson was afraid he would be murdered. This limited purpose for the exhibit, however, does not change the character of the information defendant exposed to the jury by introducing it. This disclosure mitigates the alleged unfairness of prejudice resulting from the subsequent testimony of Taylor and other State witnesses connecting defendant with the Lewis killing. Under the whole record, we are unable to say that the trial court abused its discretion in admitting evidence of defendant's participation in that event.

Finally, we find no merit in defendant's contention that the trial court erred in permitting hearsay testimony to connect him with the Lewis killing. He refers to testimony of witnesses Steve Korb, Larry Cunningham, Robert Taylor and Wesley Betts. He did not object to the alleged hearsay statements of witnesses Korb and Cunningham. When he did object to alleged hearsay testimony of Taylor, his objection was sustained, but when substantially identical questions were subsequently asked, he did not object. Betts was permitted to testify over a hearsay objection that the Vice Lords were afraid Tyson was going to inform the authorities what he knew of the Lewis killing. The court admitted the evidence for a non-hearsay purpose.

■ A statement is not hearsay unless it is offered for the truth of the matter asserted. Iowa R.Evid. 801(c). Third-party statements that are offered only to explain responsive conduct are not hearsay. *State v. Coburn*, 315 N.W.2d 742, 746 (Iowa 1982). Here Betts' testimony was not offered to prove that Tyson was threatening to go to the authorities. Instead it was offered to show what induced Betts and other Vice Lords to kill Tyson. Therefore it was not hearsay. *See State v. Williams*, 305 N.W.2d 428, 432–33 (Iowa 1981). We need not determine whether the evidence might also have been admissible on some other ground.

We find no reversible error in the trial court's rulings on evidence of defendant's connection to the Lewis killing.

III. *The motion for judgment of acquittal.* In contending the trial court erred in overruling his motion for acquittal, defendant asserts no corroboration existed for the testimony of accomplices and the evidence was insufficient on the issue of first degree murder.

Principles governing both of these assertions are reviewed in *Doss* where the same issues were raised and rejected in similar circumstances. 355 N.W.2d at 877–80. Here the issue of whether at least two of the witnesses were accomplices was a jury question and the court therefore did not err in overruling the motion to acquit on the lack of corroboration ground. Moreover, the evidence of defendant's participation in the Tyson killing as an aider and abettor was sufficient to permit jury submission of first degree murder on that theory. Substantial evidence was adduced that defendant held Tyson in a chokehold while Langley repeatedly stabbed him. This was evidence from which the jury could find defendant was more than a mere bystander.

We have considered all of defendant's contentions and arguments and find no reversible error.

AFFIRMED.